| | |
|---|---|
| SHEILA SCHMITZ and ROBERT SCHMITZ, as Representatives of the Estate of JOANNE SCHMITZ, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br>   v.<br><br>VALENTINE & KEBARTAS, LLC, and LVNV FUNDING, LLC,<br><br>        Defendants. | Case No.: 18-cv-15<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"), and the Wisconsin Consumer Act, chapter 427, Wisconsin Statutes (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337 and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Sheila Schmitz is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Robert Schmitz is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Plaintiffs are brother and sister.

6. Plaintiffs are the representatives of the Estate of Joanne Schmitz, who was Plaintiffs' mother. Hereinafter, "Schmitz" or "Plaintiff" shall collectively refer Joanne Schmitz and to Plaintiffs in their representative capacities, unless otherwise noted.

7. Joanne Schmitz passed away on April 30, 2017.

8. Schmitz was a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes.

9. Schmitz was also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that she engaged in a consumer credit transaction.

10. The claims in the complaint allege that defendants violated the FDCPA and the WCA. Such claims are not extinguished upon the consumer's death.

11. A claim survives the death of a party where the relief sought is remedial and not penal in nature. *United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993).

12. The Seventh Circuit and other circuits have stated that the FDCPA is remedial in nature. *Veach v. Sheeks*, 316 F.3d 690, 692 (7th Cir. 2003); *Tolentino v. Friedman*, 46 F.3d 645, 650-51 (7th Cir. 1995); *Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 740-41 (7th Cir. 2004) (Wood, J. *dissenting*); *see also Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002) ("Because the FDCPA, like the Truth in Lending Act, is a remedial statute, it should be construed liberally in favor of the consumer.") (internal citation omitted); *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1176 (9th Cir. 2006); *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993):

> The [Consumer Credit Protection] Act [of which the FDCPA is a part] is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be

> construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

13. Numerous courts have determined that claims brought under consumer protection statutes, like the FDCPA and the Truth in Lending Act ("TILA"), survive the death of the consumer plaintiff. *Smith v. No. 2 Galesburg Crown Fin. Corp.*, 615 F.2d 407, 415 (7th Cir. 1980) (holding that a TILA claim survived death), *overruled on other grounds by Pridegon v. Gates Credit Union*, 683 F.2d 182, 194 (7th Cir. 1982); s*ee also Cuoco v. Palisades Collection, LLC*, Civil Action No. 13-6592 (JLL), 2014 U.S. Dist. LEXIS 31660 (D.N.J. Mar. 11, 2014); *Bracken v. Harris & Zide, L.L.P.*, 219 F.R.D 481, 484-85 (N.D. Cal. 2004) (holding that claims under the Fair Debt Collection Practices Act are analogous to claims under TILA, and are remedial claims that survive the death of the defendant); *Jewett v. Bishop, White Marshall & Weibel, P.S.*, No. CV 12-10142 PSG (MRWx), 2013 U.S. Dist. LEXIS 181608, 2013 WL 6818245, at *3 (C.D. Cal. Feb. 25, 2013) (holding that an FDCPA claim survived death of plaintiff); *James v. Home Constr. Co.,* 621 F.2d 727, 729-30 (5th Cir. 1980) (same); see also *Sw. Sunsites v. Fed. Trade Comm.*, 785 F.2d 1431, 1439 (9th Cir. 1986) (noting the FTC's "broad remedial power").

14. Defendant Valentine & Kebartas, LLC ("Valentine") is a foreign limited liability company with its principal place of business located at 15 Union Street, Lawrence, Massachusetts 01840.

15. Valentine is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

3

16. Valentine is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes. Valentine is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

17. LVNV Funding, LLC ("LVNV") is a foreign limited liability company with its principal place of business located at 15 South Main St., Greenville, South Carolina 29601.

18. LVNV is engaged in the business of a collection agency, in that it purchases and receives assignment of consumer debts that are in default at the time LVNV acquires them.

19. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

20. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 172984 (M.D. Pa. Oct. 19, 2017); *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697 *20-22 (E.D. Pa. Aug. 9, 2017) ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector if either (1) its 'principal purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'").

21. The primary purpose of LVNV's business, and LVNV's principal purpose, is the collection of consumer debts. LVNV's website states:

> LVNV Funding LLC, ("LVNV") purchases portfolios of both domestic (U.S.) and international consumer debt owned by credit grantors including banks and finance companies, and by other debt buyers. As the new owner of any debt previously owned by another creditor, LVNV's name may appear on a customer's credit report or in a letter from a collection agency.

http://www.lvnvfunding.com/.

22. LVNV is also a debt collector under Wisconsin law.

23. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added). On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

24. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

25. LVNV is a "merchant" as defined in the WCA, as it has, or claims to have, taken assignment of Schmitz's former consumer credit card accounts. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.")

26. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

27. The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

28. LVNV uses both ordinary collection methods such as mail and telephone communications, and also civil lawsuits, in its collection business.

29. A company meeting the definition of a "debt collector" (here, LVNV) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

30. LVNV is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

31. On or about November 11, 2017, Schmitz received a debt collection letter from Valentine. A copy of this letter is attached to this complaint as Exhibit A.

32. Upon information and belief, the alleged debt referenced in Exhibit A is an alleged Citibank credit card, used only for personal, family or household purposes, including but not limited to purchases of household goods and services.

6

33. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Schmitz inserted by computer.

34. The letter Valentine sent to Schmitz (Exhibit A) includes the text:

**WISCONSIN RESIDENTS:**
This collection agency is licensed by the Division of Banking in the Wisconsin Department of Financial Institutions, www.wdfi.org.

(emphasis in original).

35. The above language on a collection letter is a representation that the debt collector holds a Wisconsin Collection Agency License, pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code § DFI-Bkg. 74.

36. Valentine does not, in fact, hold a Wisconsin Collection Agency License.

37. Valentine is not licensed by the Division of Banking or any other Wisconsin governmental agency.

38. Valentine was not licensed by the Division of Banking or any other Wisconsin governmental agency at the time Exhibit A was sent to Plaintiff.

39. Valentine is not listed on the Division of Banking's website that lists all collection agencies that currently hold a Wisconsin collection agency license. http://www.wdfi.org/fi/lfs/licensee_lists/Default.asp?Browse=CA (visited September 28, 2016).

40. A representative of the Division of Banking confirmed to Schmitz's counsel over the telephone that Valentine did not hold a Wisconsin collection agency license on the date that Exhibit A was mailed, and that Valentine's license expired on June 27, 2016 and was not renewed.

41. A false statement about a debt collector's licensing status is a material false statement. "It suggests that [the debt collector] has been approved by the state, thereby enhancing

7

in the mind of the unsophisticated consumer [the debt collector's] legitimacy and power to collect the debt." *Radaj v. ARS Nat. Services, Inc.*, No. 05 C 773, 2006 U.S. Dist. LEXIS 68883 at *10; 2006 WL 2620394 at *3 (E.D. Wis. Sep. 12, 2006); *Seeger v. Aid Assocs.*, 2007 U.S. Dist. LEXIS 22824 at *13, 2007 WL 1029528 (E.D. Wis. Mar. 29, 2007) ("this court believes that the false statement used by Plaza that it was licensed by the state of Wisconsin, is precisely the kind of misrepresentation that Congress sought to prohibit when it passed the FDCPA.").

42. LVNV is liable, directly or vicariously, for its debt collectors' FDCPA and WCA violations. *Janetos*, 825 F.3d at 325-26.

43. Plaintiffs were confused by Exhibit A.

44. The unsophisticated consumer would be confused by Exhibit A.

45. Plaintiffs had to spend time and money investigating Exhibit A.

46. Plaintiffs had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on Exhibit A.

47. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler &*

*Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

48. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

## COUNT I – FDCPA

49. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

50. <u>Exhibit A</u> falsely states that: "This collection agency is licensed by the Division of Banking" for the State of Wisconsin.

9

51. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

52. 15 U.S.C. § 1692e(1) specifically prohibits the false representation that "the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof."

53. 15 U.S.C. § 1692e(9) specifically prohibits "the use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval."

54. Defendants violated 15 U.S.C. §§ 1692e, 1692e(1) and 1692e(9) by falsely telling consumers that Valentine was licensed by the State of Wisconsin's Division of Banking.

## COUNT II – WCA

55. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

56. The alleged underlying transaction, i.e. consumer credit card, was a consumer credit transaction or consumer transactions with an agreement to defer payment.

57. Wis. Stat. § 427.104(1)(k) specifically prohibits a debt collector from using "a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a government, governmental agency or attorney−at−law when it is not."

58. By using a letter which falsely represented Valentine's licensing status in <u>Exhibit A</u>, Valentine used a communication which gave the appearance of being authorized or approved by a governmental agency (the Division of Banking).

10

Case 2:18-cv-00015-NJ     Filed 01/04/18     Page 10 of 12     Document 1

59. Defendants violated Wis. Stat. § 427.104(1)(k).

## CLASS ALLEGATIONS

60. Plaintiffs bring this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter by Valentine, (c) stating that Valentine is licensed by the Division of Banking in Wisconsin, (d) seeking to collect a debt for personal, family or household purposes, (e) between January 4, 2017 and up to and including January 4, 2018, (f) that was not returned by the postal service.

61. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

62. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibit A violates the FDCPA and/or the WCA.

63. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

64. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

65. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

66. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: January 4, 2018.

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com